1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10   JOHN WESLEY WILLIAMS,

11             Plaintiff,                    No. CIV S-06-1238 FCD GGH P

12        vs.

13   J. FLINT, et al.,

14             Defendant.                    <u>ORDER</u>

15   _____/

16            Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to

17   42 U.S.C. § 1983.  On June 6, 2006, this action was removed to federal court from state court.

18   The court will now screen the complaint.  28 U.S.C, § 1915(e)(2).

19            Named as defendants are Lieutenant Flint, Lieutenant Holmes, Sergeant

20   Blackburn, Sergeant Ybarra, Officer Hampton and Officer Cervantes.  Plaintiff first alleges that

21   on May 25, 2005, Officer Cea told plaintiff that he was being transferred to a different building.

22   Plaintiff told officer Cea that he had an injunction pending in another action filed in this court

23   which prohibited plaintiff from being harassed and retaliated against.  Defendant Cea relayed this

24   information to defendant Blackburn who told plaintiff that defendant Hampton wanted him

25   transferred.  Defendant Blackburn told plaintiff that he did not care about plaintiff's pending

26   litigation or citizen complaints against defendant Hampton.  Plaintiff told defendant Blackburn

1

1    that his approval of plaintiff's transfer was in retaliation for plaintiff's legal activities.

2        Plaintiff returned to his cell and continued packing.  When defendant Blackburn

3    came to his cell, plaintiff informed him that he needed to see a mental health worker because he

4    was experiencing mental problems.  Defendant Blackburn placed plaintiff in handcuffs and

5    ordered another officer to escort plaintiff to the medical clinic.

6        Once at the medical clinic, plaintiff was placed in a holding cage under the

7    supervision of defendant Cervantes.  Defendant Cervantes told plaintiff that no mental health

8    staff were available.  Sometime later, defendant Blackburn arrived and told plaintiff to go to his

9    new housing unit.  Plaintiff told defendant Blackburn that he needed to see a mental health

10    worker because he was feeling suicidal.  Defendant Blackburn then gave plaintiff a medical

11    health care request and told plaintiff to fill it out in his new cell.  Plaintiff told defendant

12    Blackburn that he needed to be seen by mental health staff.  Defendant Blackburn responded that

13    plaintiff could either go to his new cell or to administrative segregation.

14        Plaintiff then told defendant Blackburn that he felt like killing himself.  Defendant

15    Blackburn told defendant Cervantes that plaintiff was going to segregation and left plaintiff

16    locked in the holding cage.  Plaintiff again told defendant Cervantes that he needed to be seen by

17    mental health staff.  Defendant Cervantes again told plaintiff that no mental health staff were

18    available.

19        While locked in the holding cage, plaintiff attempted suicide by cutting his wrist.

20    An inmate noticed blood dripping down plaintiff's hand and Psychologist Holiday was

21    summoned.  Psychologist Holiday then informed plaintiff's psychologist, Dr. Botello, that one of

22    her patients was in the holding cage asking to speak with her.  Plaintiff was then placed on

23    suicide watch.

24        Prior to being transferred to suicide watch, defendant Flint came to speak with

25    plaintiff regarding the administrative segregation unit placement notice prepared by defendant

26    Blackburn.  Defendant Flint told plaintiff that he was going to segregation due to being a

1   program failure and for his own safety.

2        Plaintiff was placed in administrative segregation seven days after his placement

3   on suicide watch.  The administrative segregation placement notice that was placed on plaintiff's

4   cell door stated that he was a member of the Blood prison/street gang.  Plaintiff alleges that

5   defendants knew that one month earlier, plaintiff had been cleared of gang membership.

6        On June 2, 2005, defendant Ybarra arranged for plaintiff to be housed with a

7   Blood prison/street gang member.  Plaintiff told defendant Ybarra that he wanted no involvement

8   with gang activity and that he needed a lower bunk for medical reasons.  Defendant Ybarra told

9   plaintiff to sleep in the cell for one night on the upper bunk and she would find plaintiff a risk

10   free cell.  Plaintiff alleges that defendant Ybarra did not find him a new cell the following day.

11   This caused plaintiff to again be placed on suicide watch.

12        Plaintiff filed an inmate complaint regarding defendant Blackburn's conduct on

13   May 25, 2005.  Defendant Ybarra reviewed the complaint, although she and defendant Blackburn

14   had the same rank.  The prison coordinator later ordered plaintiff's complaint reheard.

15        On September 10, 2005, defendant Holmes interviewed plaintiff regarding the

16   events of May 25, 2005.  Defendant Holmes conducted no investigation into plaintiff's claims.

17   Defendant Holmes' report was identical to the report prepared by defendant Ybarra.

18        Plaintiff's complaint contains four legal claims: 1) plaintiff's transfer on May 25,

19   2005, was motivated by retaliation; 2) plaintiff was denied mental health treatment in violation of

20   the Eighth Amendment; 3) the false labeling of plaintiff as a gang member violated the Eighth

21   Amendment; and 4) the failure to investigate plaintiff's administrative appeals fostered a code of

22   silence in violation of state and federal law.

23        In order to state a retaliation claim, a plaintiff must plead facts which suggest that

24   retaliation for the exercise of protected conduct was the "substantial" or "motivating" factor

25   behind the defendant's conduct.  See Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th

26   Cir. 1989).  The plaintiff must also plead facts which suggest an absence of legitimate

1   correctional goals for the conduct he contends was retaliatory.  <u>Pratt v. Rowland</u>, 65 F.3d 802,

2   806 (9th Cir. 1995) (citing  <u>Rizzo v. Dawson</u>, 778 F.2d 527, 532 (9th Cir. 1985).  Verbal

3   harassment alone is insufficient to state a claim.  <u>See</u> <u>Oltarzewski v. Ruggiero</u>, 830 F.2d 136, 139

4   (9th Cir. 1987).  However, even threats of bodily injury are insufficient to state a claim, because a

5   mere naked threat is not the equivalent of doing the act itself.  <u>See</u> <u>Gaut v. Sunn</u>, 810 F.2d 923,

6   925 (9th Cir. 1987).  Mere conclusions of hypothetical retaliation will not suffice, a prisoner

7   must "allege specific facts showing retaliation because of the exercise of the prisoner's

8   constitutional rights."  <u>Frazier v. Dubois</u>, 922 F.2d 560, 562 (n. 1) (10th Cir. 1990).

9            Plaintiff alleges that defendants Blackburn and Hampton ordered his transfer to a

10   new cell in retaliation for his pending litigation and citizen complaints against defendant

11   Hampton.  In particular, plaintiff cites an action filed in this court which named defendant

12   Hampton as a defendant, CIV S-04-0496 GEB DAD P, as the litigation which motivated the

13   retaliation.  Court records indicate that plaintiff filed 04-0496 on March 11, 2005, and this case is

14   correctly identified as <u>05</u>-496.  As of May 25, 2005, no orders had issued in this action.  In other

15   words, defendant Hampton had not yet been served with this complaint.  It is unclear how

16   plaintiff is claiming that defendants were aware of 04-496 under these circumstances.  For this

17   reason, the court cannot find that defendants were motivated by this lawsuit when they ordered

18   plaintiff's transfer.

19            Plaintiff also alleges that defendants were motivated by his citizen complaints

20   against defendant Hampton.  Plaintiff does not describe any of these citizen complaints, such as

21   when they were filed and whether defendants Hampton and Blackburn were aware of them.  For

22   this reason, the court finds that plaintiff's retaliation claim based on the filing of citizen

23   complaints is vague and conclusory.  This claim is dismissed with leave to amend.

24            Plaintiff next alleges that he was denied mental health treatment.  This allegation

25   states a colorable claim for relief against defendants Blackburn, Cervantes and Ybarra.

26   \\\\\

Plaintiff alleges that defendants falsely labeled him as a gang member prior to his placement in administrative segregation.  The court finds that these allegations state a colorable claim for relief against the defendants linked to this claim, i.e. defendants Blackburn, Flint and Ybarra.

Finally, plaintiff alleges that defendants' failure to investigate his administrative appeals violated state and federal law.  The court construes this to be a claim for violation of the right to due process.  Inmates lack a separate constitutional entitlement to a specific grievance procedures.  Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003); see Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988) (order) ("[t]here is no legitimate claim of entitlement to a grievance procedure.").  Plaintiff's claim regarding defendants' failure to investigate his administrative appeals does not state a colorable claim.

For the reasons discussed above, plaintiff's claims for retaliation and violation of due process based on the process of his administrative appeals are dismissed.  If plaintiff chooses to amend the complaint, plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of plaintiff's constitutional rights.  See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980).  Also, the complaint must allege in specific terms how each named defendant is involved.  There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation.  Rizzo v. Goode, 423 U.S. 362 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  Furthermore, vague and conclusory allegations of official participation in civil rights violations are not sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

In addition, plaintiff is informed that the court cannot refer to a prior pleading in order to make plaintiff's amended complaint complete.  Local Rule 15-220 requires that an amended complaint be complete in itself without reference to any prior pleading.  This is because, as a general rule, an amended complaint supersedes the original complaint.  See Loux v.

Rhay, 375 F.2d 55, 57 (9th Cir. 1967).  Once plaintiff files an amended complaint, the original pleading no longer serves any function in the case.  Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

Accordingly, IT IS HEREBY ORDERED that plaintiff's claims alleging retaliation and violation of due process based on the processing of his administrative appeals are dismissed with thirty days to file an amended complaint; if plaintiff does not file an amended complaint within that time, the court will issue further orders.

DATED: 7/25/06

/s/ Gregory G. Hollows

GREGORY G. HOLLOWS
UNITED STATES MAGISTRATE JUDGE

ggh:kj
will1238.ord

6