IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOHN WESLEY WILLIAMS,

      Plaintiff,                    No. CIV S-06-1238 FCD GGH P

   vs.

J. FLINT, et al.,

      Defendants.              <u>FINDINGS & RECOMMENDATIONS</u>

_____/

I. <u>Introduction</u>

      Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court is defendant Judd's summary judgment motion filed May 14, 2008. On May 30, 2008, plaintiff filed an opposition to this motion requesting that it be denied pursuant to Fed. R. Civ. P. 56(f). On July 18, 2008, the court granted plaintiff twenty days to file a supplemental opposition making the showing required by Fed. R. Civ. P. 56(f). On August 6, 2008, plaintiff filed an opposition addressing the merits of defendants's motion. In other words, plaintiff did not oppose defendant's motion pursuant to Fed. R. Civ. P. 56(f).

      After carefully considering the record, the court recommends that defendant's motion be granted.

///

1

II. <u>Summary Judgment Standards Under Rule 56</u>

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party
> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" <u>Id.</u> Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See <u>id.</u> at 322, 106 S. Ct. at 2552. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." <u>Id.</u> In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." <u>Id.</u> at 323, 106 S. Ct. at 2553.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. <u>See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its

contention that the dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11, 106 S. Ct. at 1356 n. 11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson, 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (citation omitted).

On December 21, 2006, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409, 411-12 (9th Cir. 1988).

III. Discussion

    A.  Procedural Background

On June 6, 2006, this action was removed from state court.  On November 16, 2006, the court granted plaintiff leave to proceed on the amended complaint filed October 5, 2006, as to defendants Blackburn, Cervantes, Flint, Holmes, Ybarra, Hill, Kernan, Leiber, Malfi, Mayfield, O'Brian and Smith.

On August 7, 2007, the court granted plaintiff's June 6, 2007, motion for leave to file an amended complaint as to his claim that defendant Jubb refused to change his classification score.

On September 7, 2007, all defendants but for Judd moved for summary judgment. On July 22, 2008, the court recommended that the September 7, 2007, summary judgment motion be granted.  On September 10, 2008, the district court adopted these findings and recommendations.

On May 14, 2008, defendant Judd filed the pending summary judgment motion. In this motion, defendant Judd refers to the statement of undisputed facts and evidence submitted by the other defendants in support of the summary judgment filed September 7, 2007. Accordingly, all references in these findings and recommendations to defendant's exhibits are to those submitted in support of the first summary judgment motion.

    B.  Undisputed Facts

*Undisputed Facts*

The following facts are undisputed regarding plaintiff's Eighth Amendment claims.  The court will include mention of some disputed facts as they clarify the undisputed

1 facts.

2         On April 30, 2004, plaintiff arrived at the North Kern State Prison-Reception
3 Center. Defendants' Exhibit A, attachment 1, p. 24. The intake form states that plaintiff
4 identified himself as a member of the Blood street gang.[1]  Id., p. 26.

5         On November 26, 2004, staff conducting an archive review of plaintiff's file for a
6 prior incarceration from which plaintiff was discharged noted that plaintiff was an ex-member of
7 the swans Blood street gang. Id., p. 28.

8         On December 7, 2004, plaintiff was transferred to California State Prison-
9 Sacramento (CSP-Sac). Id., p. 24.

10         On December 16, 2004, plaintiff appeared before a classification committee, of
11 which defendant Smith was a member. Id., p. 31. The classification committee report states that
12 plaintiff had no enemies and that his gang status was "none." Id. The committee released
13 plaintiff to the general population in Facility C. Id.

14         On February 21, 2005, plaintiff submitted an administrative grievance asking that
15 defendant Smith be removed and investigated in part because he had improperly labeled plaintiff
16 as a member of a gang. Id., pp. 45-46. Defendant Mayfield refused to address this issue because
17 the grievance was not timely filed. Id., p. 45. The Second Level Appeal stated that plaintiff's
18 gang/disruptive group issue was being addressed in appeal no. 05-00507. Id., p. 53.

19         Plaintiff filed appeal no. 05-0507 on March 25, 2007. Id., p. 56. On April 25,
20 2005, the appeal was denied at the second level. Id., p. 65-66. In this appeal, plaintiff claimed
21 that on March 24, 2005, he became aware that defendant Smith identified plaintiff as an active

---

[1] In his declaration submitted in support of his opposition, plaintiff states that during the intake interview at NKSP he was asked whether or not he was a gang member. Plaintiff's declaration, ¶ 3. Plaintiff responded that he was not. Id. Plaintiff was then asked what street gang dominated the area in which he was raised. Id. Plaintiff responded that it was the Blood gang. Id. Plaintiff now contends that the intake form from NKSP erroneously stated that he was a member of a gang. While this may be true, the defendants at CSP-Sac are not responsible for this mistake. It is still undisputed that the intake form, which they reviewed, stated that plaintiff was a gang member.

1   street gang member. Id., p. 65. Plaintiff claimed that this occurred because plaintiff filed a

2   lawsuit against Warden Kernan. Id. The response from Warden Kernan, dated April 25, 2005,

3   stated,

> A review of your complaint revealed that you are listed by self-admission as a "SWANS BLOOD" member street/disruptive group. Your CDC Form 1882 dated April 30, 2004, lists this information based on your self-admission. Your Probation Officer Report dated November 23, 2004, also lists the same information. This information is insufficient to validate you as a street gang/disruptive group member based on current departmental criteria. Your gang status is listed as NONE based on the current criteria and information. Your housing status based on this information would indicate that you could be housed with another inmates listed as a "BLOOD."
>
> Your allegation that CCI Smith and CCII J. Mayfield listed you as an active gang member is completely unfounded...

Id., p. 66.

On April 19, 2005, plaintiff told a psychiatrist that he was distressed that custody had him classified as a Blood. Defendants' Exhibit B, attachment 1, p. 103. Plaintiff said that he was the victim of a conspiracy. Id.

On April 27, 2005, a gang investigator filed a report stating that he had reviewed plaintiff's central file and interviewed plaintiff. Defendants' Exhibit A, attachment 1, p. 76. He reported that there was insufficient evidence to validate plaintiff as a member or associate of any prison gang or disruptive group. Id. The report stated,

> During the interview with WILLIAMS, he stated that he was associated with the disruptive group known as "Swans Bloods" and became an ex-member when the group became aware of his conviction of PC 288(a)(c) Forcible Oral Copulation resulting in a "R" suffix being placed in his central file. This information is verified via CDC 812 dated November 26, 2004 that states: WILLIAMS is an ex-member of the disruptive group Swan Bloods. A check of WILLIAMS most recent 128-G lists WILLIAMS association with Gangs/Disruptive Groups as "none." WILLIAMS requested to have the gang information updated and to reflect his gang status as non-affiliated.
>
> *****
>
> This identification for member/associate requires at least three independent source items of documentation indicative of actual membership or gang involvement. There were insufficient source items of gang activity by WILLIAMS for

validation. The IGI will update his gang status as being non-affiliated with any prison gang or disruptive group at this time.

There were no documented enemies listed on WILLIAMS' CDC-812 at SAC. WILLIAMS' behavior should be closely monitored whenever gang activity or association is present. If any additional information should become available, WILLIAMS should be reevaluated.

Id.

On June 2, 2005, plaintiff was transferred from Building 2 to Building 5 in Facility C, where he was housed until June 4, 2005. Defendants' Exhibit O, ¶ 6. During these three days, plaintiff was housed with an inmate who was listed as an associate of the Blood street gang. Id.

Whether plaintiff was allowed to choose a cellmate upon his arrival at Building 5 on June 2, 2005, is disputed. According to defendants, when plaintiff arrived at Building 5, he was given the opportunity to review a picture board showing vacant beds for cells with non-affiliated inmates. Defendants' Exhibit No, no. 13. Plaintiff was also given an opportunity to talk to these inmates in those cells before selecting a cellmate. Id. After plaintiff refused to be housed with any of these inmates, he was assigned to a cell with an inmate who was a Blood gang member, but not an enemy.

According to plaintiff, when he arrived in Building 2, defendant Ybarra told him that he would be housed with a Blood gang member, and that if he refused, he would be returned to ad seg. Plaintiff's declaration filed in support of opposition, ¶ 10. Plaintiff alleges that defendant Ybarra did not let him look at a photo board of inmates with no gang affiliation. Id.

Plaintiff was housed in a single cell in Facility A, building 8 from June 4, 2005, to June 7, 2005. Defendants' Exhibit O, ¶ 7. From June 7, 2005, to August 5, 2005, plaintiff was housed in Facility A, building 3, with an inmate identified as a Blood gang member, but not an enemy of plaintiff. Id., ¶ 8. From August 5, 2005, to August 18, 2005, plaintiff was out-to-court in Los Angeles County. Id., ¶ 9.

\\\\\

7

1    On June 13, 2005, plaintiff submitted a grievance claiming that defendant Hill
2 was labeling him as a gang member by forcing him to house with a gang member. Defendants'
3 Exhibit A, pp. 114-115. Plaintiff requested that defendant Hill be prohibited from "engaging in
4 deceptive or corruptive practices." Id., p. 118. Defendant Ybarra granted this appeal. Id. On
5 July 12, 2005, the CSP-Sac appeal coordinator reviewed plaintiff's appeal and sent him a request
6 asking him if he was still housed with a gang member or labeled as a gang member. Id., p. 121.
7 On August 18, 2005, defendant Kernan granted the appeal at the second level, finding that
8 plaintiff was housed in the Enhanced Outpatient Program (EOP) with no gang affiliation. Id.
9    When plaintiff returned from out-to-court status on August 18, 2005, he was
10 housed in Facility A, Building 1, until October 23, 2005. Defendants' Exhibit O, ¶¶ 10-11.
11 During that time, plaintiff had three cellmates, none of whom were listed as gang or corruptive
12 group members or associates, or enemies of plaintiff. Id.
13    On October 23, 2005, plaintiff moved to Facility A, Building 3. Id., ¶ 11.
14 Plaintiff's cellmate was not a member of a gang or disruptive group, nor was he an enemy of
15 plaintiff. Id. Plaintiff was single celled in Facility A, Building 3, from November 3-17, 2005.
16 Id., ¶ 11.
17    On November 17, 2005, plaintiff was housed briefly in Facility C, Building 5,
18 before being transferred the same day to Building 4, where he was housed until July 19, 2006.
19 Id., ¶ 12. During that time, plaintiff had a series of 6 cellmates, two of whom were listed as gang
20 members or associates, and none were listed as enemies of plaintiff. Id.
21    On July 19, 2006, plaintiff was moved to Facility C, Building 5, where he was
22 housed until August 11, 2006, with a series of 4 inmates, 1 of whom was listed as a gang member
23 or associate. Id., ¶ 13. None of these inmates were listed as plaintiff's enemy. Id
24    On August 11, 2006, plaintiff was transferred from Facility C to Facility B.
25 Defendants' Exhibit A, attachment 1, p. 330. The record contains no other information regarding
26 plaintiff's cellmates at CSP-Sac after this time. On March 23, 2007, plaintiff was transferred

away from CSP-Sac.

*Analysis*

Plaintiff alleges that defendant Judd refused to change his classification score which was inflated because he was wrongly labeled as a gang member. June 6, 2007, Amended Complaint, ¶¶ 113-115. Plaintiff suggests that defendant Judd violated his right to due process. Plaintiff also suggests that the improper classification score violated the Eighth Amendment by subjecting plaintiff to harm at the hands of other inmates.

As to the due process claim, defendant moves for summary judgment because prisoners have no constitutional right to a particular classification status. Hernandez v. Johnston, 833 F.2d 1316, 1318 (9th Cir. 1987). Pursuant to Hernandez, defendant is entitled to summary judgment as a matter of law as to this claim.

With respect to the Eighth Amendment claim, plaintiff appears to claim that as a result of the classification score, inflated because he was wrongly labeled as a gang member, he was improperly housed with gang members. Plaintiff does not claim that he suffered any physical harm as a result of being housed with rival gang members, but that he suffered emotional distress.

Under the Eighth Amendment, prison officials have a duty to protect prisoners from violence at the hands of other inmates. Farmer v. Brennan, 511 U.S. 825, 833, 114 S.Ct. 1970 (1994). The Eighth Amendment is violated when the inmate shows that he is incarcerated under conditions posing a substantial risk of serious harm, and that officials displayed "deliberate indifference" to inmate health or safety. Id. at 834, 114 S.Ct. 1970. A prison official is deliberately indifferent to a substantial risk of serious harm if that official is subjectively aware of the risk and does nothing to prevent the resulting harm. Id. at 828-829, 114 S.Ct. 1970. Deliberate indifference requires that an official "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837, 114 S.Ct. 1970.

1  Defendant moves for summary judgment on the ground that plaintiff was not
2 physically harmed in any way as a result of the alleged improper classification score.  Plaintiff
3 does not allege nor present evidence demonstrating, for example, that as a result of the improper
4 classification score he was housed with gang members who physically harmed him.  42 U.S.C. §
5 1997e(e) requires a prisoner who wishes to bring a federal or civil rights action for mental or
6 emotional injury to make a prior showing of physical injury.  In the Ninth Circuit, this requires "a
7 prior showing of physical injury that need not be significant but must be more than de minimis."
8 Oliver v. Keller, 289 F.3d 623, 627 (9th Cir. 2002).  Because plaintiff alleges no physical injury
9 as a result of the allegedly improper classification score, § 1997e(e) bars his claim.  Defendant
10 should be granted summary judgment on this ground.[2]

11  Defendant also argues that to the extent plaintiff claims that the points added to
12 his classification score because of his gang membership implicated the length of his confinement,
13 his sole remedy is a petition for writ of habeas corpus.  The court does not find that plaintiff is
14 raising claims concerning the length of his confinement.  However, if he were, the court would
15 agree that such claims should be raised in a habeas corpus petition.

16  Defendant also argues that he is entitled to qualified immunity.  Because the court
17 finds that defendant is entitled to summary judgment on the merits, it need not engage in a
18 qualified immunity analysis.

19  Plaintiff also claims that defendant Judd threatened to increase his classification
20 score even higher if plaintiff insisted on pressing the point.  Plaintiff may be suggesting that
21 defendant Judd threatened to retaliate against him if he continued to request a change in his
22 classification score.  Although defendants have not addressed this claim, the court recommends

---

[2] It is unclear whether plaintiff's inflated classification score caused him to be housed with gang members.  The record suggests that the information in plaintiff's central file that he admitted to previously being a gang associate caused prison officials to house him with gang members rather than his classification score.  Because plaintiff suffered no physical injury, the court need not consider this matter any further.

that it be dismissed as legally frivolous.  28 U.S.C. § 1915(e)(2).

Plaintiff does not allege that defendant Judd actually retaliated against him. Rather, plaintiff alleges that defendant threatened to retaliate against him if he "pressed his point."  A mere threat without more is not actionable.  See Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987).  Moreover, there is no claim by plaintiff that this threat of retaliation chilled the exercise of his First Amendment rights or otherwise caused him to suffer more than minimal harm.  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).  Accordingly, this claim should be dismissed.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's retaliation claim against defendant Judd be dismissed pursuant to 28 U.S.C. § 1915(e)(2);

2. Defendant Judd's May 14, 2008, summary judgment motion (# 94) be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: 10/29/08

/s/ Gregory G. Hollows

UNITED STATES MAGISTRATE JUDGE

will1238.56